inference that the injury to plaintiff occurred at practically the same moment that the board upon which he was working went off the table, and it was a fair question for the jury, in the light of all the proof, to determine the sequence of events and what was the cause and which the effect. The burden of showing plaintiff's contributing negligence was upon the defendant. Here, as in all negligence cases, the plaintiff's proof of the accident involves, to some extent, the basis for the charge of contributory negligence. But with all the proof in the case, if an inference is justifiable therefrom, which exculpates the plaintiff from the charge of negligence, then a question of fact is presented for the jury. It cannot be said that the evidence in this case so clearly meets the burden imposed by law upon the defendant, in that particular, that we can hold plaintiff negligent, as a matter of law, or that the verdict reached is contrary to the weight of the evidence.

[6] The record presents a single exception requiring mention. The court was asked to charge that if the jury found that plaintiff met with the injury by getting his hand under the guard and into the knives at a time when the board was not upon the table, the verdict must be no cause of action. This request has no foundation in the facts. But one witness, besides plaintiff, saw the accident. This witness Swartz, sworn by the defendant, testified that he saw plaintiff's hand drop onto the knives and the board went onto the floor. This witness says:

"He slipped onto the knives, and the top dropped, and, while he slipped, it seems he caught the knives, and he dropped the top with his left hand, and his hands went into the knives."

It is apparent from this and other testimony from this witness that the dropping of the board from the table, and the injury to plaintiff's right hand, were practically simultaneous occurrences, resulting from the same producing cause. There is no evidence in the case that plaintiff's hand slipped into the machine after the board had fallen to the floor. The court was therefore justified in declining to instruct the jury as requested.

The judgment and order should be affirmed, with costs. All concur except ROBSON and MERRELL, JJ., who dissent.

---

(161 App. Div. 177)

MEAD v. HERDMAN et al.

(Supreme Court, Appellate Division, Third Department. March 4, 1914.)

1. EXECUTORS AND ADMINISTRATORS (§ 221*)—SERVICES TO DECEDENT—ACTION FOR COMPENSATION—EVIDENCE—SUFFICIENCY.

In an action for compensation for services rendered and supplies advanced to defendants' testatrix, under an agreement that at her death plaintiff should receive her property, evidence *held* to warrant a finding for plaintiff.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 901–903½, 1858, 1861–1863, 1865, 1866, 1871–1874, 1876; Dec. Dig. § 221.*]

---

2. WITNESSES (§ 202*)—COMPETENCY.

    Code Civ. Proc. § 835, provides that attorneys shall not disclose communications made by their clients, while section 836 declares that that provision shall not disqualify an attorney on the probate of a will from becoming a witness as to its preparation and execution in case he is one of the subscribing witnesses thereto. A testatrix had the attorney who prepared her will sign as one of the subscribing witnesses, but she subsequently revoked the will. *Held*, that the revocation revoked the right of the attorney to testify to the facts concerning the execution and preparation of the will.

    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 756, 757; Dec. Dig. § 202.*]

3. APPEAL AND ERROR (§ 1051*)—REVIEW—HARMLESS ERROR.

    In an action for compensation for plaintiff's care of deceased during her declining years, the admission of incompetent evidence that she made a will in plaintiff's favor, which she revoked, was harmless, where the contract was abundantly proven by competent evidence.

    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

Appeal from Trial Term, Otsego County.

Action by James H. Mead against Nellie C. Herdman and another, as executors, etc., of the estate of Mary A. Mead, deceased. From a judgment for plaintiff, for $2,000 for services and $479.20 for supplies furnished, defendants appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Louis E. Walrath, of Cooperstown, for appellants.

Franklin C. Keyes, of Laurens (W. H. Johnson, of Oneonta, of counsel), for respondent.

JOHN M. KELLOGG, J. [1] The defendants' testatrix and her husband were, in their old age, living alone at the village of Laurens, in a house owned by her, of the value, as appears by the appellant's brief, of $1,250, and at the time of her death, February 21, 1911, she had personal property of the value of $517.83. The plaintiff, a nephew of the husband, quit his employment as clerk in a grocery store at Oneonta, where he was earning $10 a week, returned to Laurens August 24, 1903, and entered the family of the testatrix for the purpose of nursing her husband and assisting them, and continued in that service until March 3, 1904, when the husband died, and on March 31, 1904, he received $143 as compensation for those services. After the husband's death he continued to reside with her until the time of her death, managing the place and taking care of her. The evidence of many credible witnesses show that she stated that she was to pay him therefor, and that he was to have all her property if he remained with her. It appears by competent evidence that about March 1, 1910, she made a will. In the year 1910 she stated that she had made a will and willed her property to the plaintiff for coming there and taking care of her; that she had made Estelle Bissell (one of the principal devisees) the same offer that she made to the plaintiff—that if she stayed with her during the time she lived and took care of her she would have her property—and she would not do it, and she made plaintiff the same offer

and when she got through he was to have her property. From the fact that the plaintiff entered the household in the first instance as an employé, and from the entire evidence in the case, it is clear that it was the understanding that he was to be paid for the services he rendered her, and was to have her property for taking care of her. During the time he earned some money working for others, which was used for the support of himself and the testatrix and for maintaining the house. January 12, 1911, Estelle Bissell, a niece, came to the house and remained there, and on the 16th day of February, 1911, the testatrix made the will, giving her property principally to her nieces, with a legacy of $100 to the plaintiff. The judgment upon all the facts is just, and should be sustained.

[2, 3] There is some trouble with reference to the evidence of the witness Keyes, the attorney who drew the will in 1910 and was a subscribing witness thereto. He swore to the execution of a will which gave to the plaintiff the house and lot and furniture, reciting that it was in payment of services rendered by him to the time of her death, and he testified to the directions given by her as to the execution of the will, which confirmed the plaintiff's claim that he was to have the property for taking care of her during her life. This testimony was objected to upon the ground that the witness was incompetent under sections 835 and 836 of the Code of Civil Procedure. There is other competent evidence as to the execution of a will at this time, but the particulars of it do not appear. This will was clearly revoked by the will made a few days before her death, and the evidence, therefore, was not offered in a proceeding for the probate of the will, but was offered for the purpose of showing an admission. Section 836 of the Code of Civil Procedure provides, among other things, that it shall not—

"disqualify an attorney in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate from becoming a witness, as to its preparation and execution in case such attorney is one of the subscribing witnesses thereto."

There seems to be substantial reason for saying that the witness was incompetent to testify to the execution of the paper, or to statements made by the alleged testatrix at the time of its execution. If the testatrix waived the seal of confidence by requesting her attorney to witness her will, she annulled such waiver by revoking the will. The alleged admission was merely cumulative; the facts admitted had been so abundantly proved by other competent evidence that the evidence of the attorney could not have affected the result.

The judgment is therefore affirmed, with costs. All concur.